**Jackie Dan CASTLEMAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36558.**

Court of Criminal Appeals of Texas.

March 4, 1964.

Rehearing Denied April 29, 1964.

**316**

Harris E. Lofthus, Amarillo, for appellant.

Dee D. Miller, Dist. Atty., Patrick H. Mulloy, Jr., Asst. Dist. Atty., Amarillo, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is murder without malice. The indictment was drawn under Article 802c, Vernon's Ann.P.C., charging appellant with drunken driving and through accident and mistake killing Tredwell Oyama Jonas by driving his automobile into him. The punishment is five years confinement in the state penitentiary.

The State's evidence reflects that on the evening of December 31, 1962, shortly before midnight, Airman Tredwell Oyama Jonas and Airman Russell Schwager were walking in an easterly direction on Northeast Eighth Street (Highway 66) with Schwager to the right of Jonas and Jonas walking in the gutter. They were struck from the rear by some vehicle. Jonas received fatal injuries and expired in the Air Base hospital at 3:50 A.M. New Year's morning.

Investigation at the scene by the Police and Sheriff's Department resulted in the discovery of a piece of broken glass and a radio antenna. The following morning, January 1, 1963, a damaged Hillman auto was discovered parked at Pantex Village. It was determined the auto belonged to the appellant, Jackie Dan Castleman. The windshield was broken and the aerial wire broken off. Glass was removed from around the broken area and the butt plate of the aerial was removed and forwarded to the FBI for expert comparisons and examination, along with the glass and radio antenna recovered at the scene.

At Pantex Village, appellant Castleman made admissions that it was his Hillman auto; that he did not recall how the accident occurred; that he had driven the car the night of December 31, 1962; that he remembered leaving Brigg's Nightclub, getting into his car and starting it; that he had been drinking quite heavily; that he was alone at the time; that no one else had used the car that he could recall. Appellant made a written confession which details that he was drunk, got into his car and started it between 11:00 and 11:30 P.M. on December 31, 1962. Appellant's testimony places him in the car on the lot at Billy Briggs Nightclub. Appellant, on cross-examination, admitted that he got in the auto and started it up. His wife testified that when he came home on the evening in question he had been drinking.

On the evening of the accident Castleman was too intoxicated for his employer to continue to allow him to wait tables at his job at Billy Briggs Nightclub, according to witness Bartender Nay.

Another witness, Erlene Williams, described an auto being driven by a man in an apparent drunken condition at about 11:30 P.M., attempting to leave the Billy Briggs Nightclub parking lot and head back into town. The witness testified this could have been the defendant and his little Hillman.

The record reflects that the glass and broken radio antenna found on the highway at the scene were taken into custody by Officer Smith and taken by him to the Amarillo Police Department and booked into evidence. Lieutenant Joe Amerson of the Amarillo Police Department testified that he received these exhibits in his official capacity as officer in charge of identification and records, and placed them under lock and key.

The glass removed from the broken front windshield and the butt plate of the aerial

removed from appellant's car were also locked up in the evidence room at the Amarillo Police Department prior to its being sent to the FBI.

FBI agent Charles Killian testified that he received the exhibits in Washington by mail from the Amarillo Police Department. Officer Amerson further testified that the FBI returned the package to him after performing their tests and that he again placed it under lock and key until it was brought over for the trial.

■ Thus we conclude that the chain of custody of the glass found on the highway at the scene and the glass and butt plate removed from appellant's car was properly proven. We further find the testimony with reference thereto sufficient to support the admission of these various exhibits into evidence. Sanders v. State, 169 Tex. Cr.R. 463, 335 S.W.2d 601; Hilliard v. State, 170 Tex.Cr.R. 290, 340 S.W.2d 494.

Charles L. Killian further testified that he was a special agent for the FBI and that he worked in the laboratory in Washington, D. C. The witness related that he had been employed by the FBI for 15 years; that he conducted glass fractures, tool mark examinations and side arms examinations; that he had a Bachelor of Science degree in mechanical engineering from Purdue University; that he was 40 years old; that he had been a lab operator for three years; that he had studied and worked under different examiners in particular units; that he had taken chemical engineering courses at Purdue University. Witness Killian testified that he had put the pieces of glass together, and he further testified that the two pieces of metal and the pieces of glass were at one time joined and were one piece.

Dr. Young testified that he treated the deceased at the Air Base Hospital and that the decedent, Jonas, died at 3:50 A.M., January 1, 1963.

The trial court charged fully on the law of circumstantial evidence. No exceptions nor objections were taken to the court's charge.

■ Appellant first levels his attack at the sufficiency of the evidence by contending that no proof was offered as to the identity of the vehicle which struck the deceased, nor was any proof adduced that appellant was the driver thereof. We overrule appellant's contention. We find the evidence sufficient to sustain the jury's verdict.

■ The record contains five formal bills of exception. Bill No. 1. relates to the admission into evidence of the glass and antenna whip found at the scene of the accident. It is appellant's position that this evidence was inadmissible because the chain of custody was not properly shown and the items were not properly identified. From what we have said above, we think the evidence was admissible. We find appellant's contention without merit. Bill No. 2. relates to the same type of evidence and is overruled. Bill No. 3. relates to the testimony of the expert witness, Charles L. Killian, the FBI agent. Appellant's counsel first objected to the testimony of this witness for the reason that he was not an expert, until his qualifications are shown. He then took him on voir dire and much of the testimony previously stated by us was adduced. The trial court stated that he was satisfied with the witness' qualifications. We agree that the witness was qualified. Appellant's counsel then later objected, in effect, that the witness was not an expert and could not express a conclusion for the reason that the witness had testified that all he had done was to look at the glass and metal and that the witness was in no better position to express an opinion or conclusion than any of the jury. We overrule appellant's contention and find no merit in Bill No. 3. Bill No. 4. relates further to the chain of custody and identity of the glass and metal and is without merit. Bill No. 5. is a motion for an instructed verdict. From what we have previously said, we find no merit in the mo-

tion and the action of the trial court in overruling it reflects no error.

Accordingly, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

BELCHER, Commissioner.

The appellant again strenuously challenges the sufficiency of the evidence to show that his automobile was in any way connected with the death of the deceased, or that he was driving his automobile upon the highway at the time and place alleged.

From a careful re-examination of the record, it is concluded that the evidence is sufficient to support the conviction, and that this cause was properly disposed of originally.

The motion for rehearing is overruled.

Opinion approved by the Court.